**2014-1378**

# United States Court of Appeals
# for the Federal Circuit

FRANK MICHAEL WEYER, and TROY K. JAVAHER,

*Appellants,*

*v.*

FACEBOOK, INC.,

*Appellee.*

*Appeal from the United States Patent and Trademark Office,*
*Patent Trial and Appeal Board in Reexamination No. 95/001,411*

## BRIEF OF APPELLEE, FACEBOOK, INC.

COOLEY LLP
HEIDI L. KEEFE
MARK R. WEINSTEIN
REUBEN H. CHEN
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA  94306
Tel: (650) 843-5000
Fax: (650) 849-7400
hkeefe@cooley.com
mweinstein@cooley.com
rchen@cooley.com

*Attorneys for Appellee*
*FACEBOOK, INC.*

JULY 7, 2014

# CERTIFICATE OF INTEREST

Counsel for Appellee Facebook, Inc. certifies the following:

1.     The full name of every party or amicus represented by me is: Facebook, Inc.

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:  None.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are: None.

4.     The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this Court are:

From Cooley LLP:  Heidi Keefe, Mark Weinstein, Reuben Chen, and Daniel Knauss.

# Table of Contents

**Page**

I.      STATEMENT OF RELATED CASES ............................................................1

II.     STATEMENT OF THE ISSUES ................................................................1

III.    STATEMENT OF THE CASE ..................................................................2

IV.     STATEMENT OF FACTS ......................................................................5

    A.      Summary of the Patent-At-Issue ........................................................5

    B.      The Reexamination Proceedings ........................................................6

        1.      The Patent Owners Argue that Claim 1 Requires All Steps to Be Performed by the "Interface Server Computer" – But Make No Amendments to that Effect............6

        2.      The Examiner Rejects the Patent Owners' Argument and Maintains the Rejection of the Claims.......................................9

        3.      The Patent Owners Again Fail to Amend Claim 1, and the Examiner Maintains the Rejections ...................................11

        4.      Appeal to the PTAB and the PTAB Decision .........................12

V.      SUMMARY OF THE ARGUMENT ........................................................15

VI.     ARGUMENT......................................................................................18

    A.      Standard of Review .......................................................................18

        1.      Claim Interpretation ................................................................18

        2.      New Ground of Rejection .......................................................18

        3.      Factual Findings and Legal Conclusions .................................19

    B.      The Federal Circuit Should Not Issue an Advisory Opinion on Claim Construction Because Appellants Have Provided No Explanation for Why Their Proposed Construction Would Affect the PTAB's Decision ..............................................19

    C.      The PTAB Correctly Construed Claim 1 as not Requiring that All Method Steps Be Performed by the "Interface Server Computer" ..................................................................22

        1.      The Claim Language and Specification Support the PTAB's Construction..............................................................23

## Table of Contents
(continued)

**Page**

2.    The Original Prosecution History Fails to Support the Appellants' Unsupported Construction ...................................25

D.    The PTAB Correctly Refused to Designate Its Affirmance of the Examiner's Rejections as New Grounds of Rejection .................26

1.    The Examiner and the PTAB Interpreted Claim 1 Consistently.............................................................................27

2.    The Claim Phrase "By an Interface Server Computer" Was At Issue Throughout the *Inter Partes* Reexamination.....30

3.    Rambus Is Distinguishable .....................................................32

VII.    CONCLUSION AND STATEMENT OF RELIEF SOUGHT ....................33

# Table of Authorities

**Page(s)**

**Cases**

*Bilski v. Kappos*,
    561 U.S. 593 (2010)............................................................................25

*C.W. Zumbiel Co., Inc. v. Kappos*,
    702 F.3d 1371 (Fed. Cir. 2012) ........................................................18

*Consumer Watchdog v. Wis. Alumni Research Foundation*,
    No. 2013-1377, ___ F.3d ____, 2014 WL 2490491 (Fed. Cir. Jun. 4, 2014)....19

*Flo Healthcare Solutions, LLC v. Kappos*,
    697 F.3d 1367 (Fed. Cir. 2012) ..................................................18, 31

*Fresenius USA, Inc. v. Baxter Int'l., Inc.*,
    582 F.3d 1288 (Fed. Cir. 2009) ..........................................15, 20, 21

*Hakim v. Cannon Avent Group, PLC*,
    479 F.3d 1313 (Fed. Cir. 2007) ........................................................20

*In re Adler*,
    723 F.3d 1322 (Fed. Cir. 2013) ..............................................17, 18, 27

*In re Bigio*,
    381 F.3d 1320 (Fed. Cir. 2004) ..................................................17, 31

*In re ICON Health and Fitness, Inc.*,
    496 F.3d 1374 (Fed. Cir. 2007) ..................................................18, 22

*In re Jung*,
    637 F.3d 1356 (Fed. Cir. 2011) ..................................................18, 27

*In re Kronig*,
    539 F.2d 1300 (C.C.P.A. 1976) ..................................................18, 27

*In re Morsa*,
    713 F.3d 104 (Fed. Cir. 2013) ........................................................19

*In re Swanson*,
    540 F.3d 1368 (Fed. Cir. 2008) ........................................................22

# Table of Authorities
## Continued

**Page(s)**

*Jang v. Boston Scientific Corp.*,
532 F.3d 1330 (Fed. Cir. 2008) .................................................20, 21

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc) ......................................23

*Rambus Inc. v. Rea*,
731 F.3d 1248 (Fed. Cir. 2013) ..........................................18, 32, 33

*SmithKline Beecham Corp. v. Apotex Corp.*,
439 F.3d 1312 (Fed. Cir. 2006) ................................................21, 22

*Storage Tech. Corp. v. Cisco Sys.*,
329 F.3d 823 (Fed. Cir. 2003) .......................................................23

*Tolbert v. Queens Coll.*,
242 F.3d 58 (2d Cir. 2001) .............................................................21

*Unique Concepts, Inc. v. Brown*,
939 F.2d 1558 (Fed. Cir. 1991) .....................................................26

*United States v. Dunkel*,
927 F.2d 955 (7th Cir.1991) (per curiam) ......................................21

## Statutes, Rules and Other Authorities:

35 U.S.C. § 101 ....................................................................25, 26

37 C.F.R.§ 1.116 ...................................................................11, 32

37 C.F.R.§ 1.116(b)(3)...........................................................11, 32

37 C.F.R.§ 41.77(b) .............................................................*passim*

M.P.E.P. § 2666.01 ...................................................................7, 30

U.S. Const. art. III, § 2, cl. 1 ...............................................*passim*

# I.    STATEMENT OF RELATED CASES

In accordance with Federal Circuit Rule 47.5, counsel for Appellee Facebook, Inc. states:

1.    There have been no other appeals in or from this same proceeding in the Patent and Trademark Office before this Court.

2.    The following cases are known to be pending in this or another court and will be directly affected by this Court's decision in the pending appeal:

- *Weyer, et al. v. Myspace, Inc., et al.*, Case No. 2:10-cv-00499-MRP-FFMx (C.D. Cal. filed Jan. 25, 2010).

- *EveryMD v. Santorum, et al.*, Case No. 2:12-cv-01623-MRP-FFMx (C.D. Cal. filed Feb. 27, 2012).

The plaintiffs in the above-listed district court cases are asserting U.S. Patent No. 7,644,122, the same patent at issue in the reexamination that is the subject of the present appeal.  Those cases have been suspended (administratively dismissed subject to reopening or stayed) pending the final outcome of the reexamination.

# II.    STATEMENT OF THE ISSUES

Appellants' primary argument is that the Patent Trial and Appeal Board ("PTAB") erred in construing the phrase, "by an interface server computer," recited in the preamble of claim 1 of U.S. Patent No. 7,644,122 ("'122 patent"). Appellants do not, however, state that any of the rejections entered by the PTAB

would be affected even if this Court adopts the construction Appellants advance in this appeal.  The first issue presented by this appeal, therefore, is:

1.     Should this Court issue an advisory opinion on the meaning of "by an interface server computer" notwithstanding that Appellants have not shown that any of the PTAB's rejections would be affected by Appellants' proposed construction?  If this Court answers this question "no," it does not need to address the claim construction question presented by Appellants.  Otherwise, this Court must address the following second issue:

2.     Did the PTAB erroneously construe "by an interface server computer" in the preamble of claim 1 under its broadest reasonable construction?

Appellants' appeal also presents the following third issue:

3.     Did the PTAB err in refusing to designate its affirmance of the Examiner's rejections as "new grounds of rejection," given that the PTAB applied the same construction as the Examiner and, in any event, Appellants had multiple opportunities to react to the thrust of the rejections?

## III.     STATEMENT OF THE CASE

Appellants Frank M. Weyer and Troy K. Javaher (collectively, "Appellants") are the two named inventors of the '122 patent.  The '122 patent purports to disclose a computer-implemented method for allowing online communications with members of a group.  (A1959-1976 at 1959 (Abstract).)

Because the techniques claimed in the '122 patent were neither novel nor nonobvious, Appellee Facebook, Inc. ("Facebook") filed a request for *inter partes* reexamination (Control No. 95/001,411) citing numerous prior art references that anticipated and/or rendered obvious the claimed method. (A0353-A0758.) The Examiner adopted the majority of Appellee's proposed rejections and found all claims of the '122 patent unpatentable. (A0222-A0280, A0113-A0171.)

On June 5, 2013, the PTAB issued an extensive 82-page decision affirming the majority of the Examiner's rejections and finding all claims invalid based on multiple independent grounds. (A2055-A2137.) With respect to independent claim 1 – the only claim addressed in the Appellants' opening brief – the PTAB found the claim anticipated by four separate prior art references, and obvious over six obviousness combinations. (A2127-A2129, (grounds (1), (2), (3), (5), (10), (11), (12), (13), (14), (15).)

The present appeal presents the unusual situation in which the Appellants do not appear to challenge the merits of **<u>any</u>** of the rejections entered by the PTAB. The patent owners do not argue that any limitation of claim 1 is not disclosed by the prior art, and in fact, do not even discuss any of the prior art references addressed in the PTAB's decision. Appellants instead have filed an exceedingly narrow appeal based on two arguments, neither of which has merit.

First, Appellants contend that the PTAB's construction of the claim phrase "by an interface server computer" in the preamble of claim 1 was incorrect, and seek a remand to the PTAB with instructions to apply Appellants' proposed construction.   (Opening Brief of Appellants ("Appeal Br.") at 35.)   Appellants contend that the PTAB erred in not construing this phrase to require that every step in the body of the claim be performed by the "interface server computer."   But Appellants' argument fails because Appellants have not shown that the PTAB's construction was erroneous in any respect or, in any case, that adoption of their proposed construction would alter any of the ten separate rejections entered by the PTAB for claim 1.   Appellants' quarrel with the PTAB's claim construction, therefore, is little more than a request that this Court issue an advisory opinion on claim construction – contrary to the mandates of Article III of the Constitution. Moreover, the prior art fully discloses the claimed method even under the erroneous interpretation advanced by Appellants in their opening brief.

Second, Appellants alternatively argue that the PTAB's affirmance of the Examiner's rejections should have been designated as "A New Ground of Rejection" under 37 C.F.R. § 41.77(b) which would have enabled Appellants to further respond with amendments.  (Appeal Br. at 35.)  But Appellants have not shown any error in the way in which the PTAB characterized its affirmance.  As the PTAB explained in its decision denying Appellants' request for rehearing, the

PTAB's decision affirmed the Examiner's decision to reject claim 1 based on the same reasoning employed by the Examiner. (A2138-A2143.) Appellants had at least two opportunities to seek amendment to their claims during the reexamination, but chose not to do so. Because the PTAB's affirmance did not change the thrust of the rejection entered by the Examiner, the PTAB was not required to designate the affirmance as a New Ground of Rejection.

## IV.   STATEMENT OF FACTS

### A.   Summary of the Patent-At-Issue

The '122 patent purports to disclose a computer-implemented method for allowing online communications with members of a group of individuals, such as, for example, members of a particular profession. (A1959 (Abstract).) The "Background of the Invention" asserts that users who desire to communicate with members of a group of professionals (e.g., doctors) via the Internet are faced with the uncertainty of whether or not the targeted member has an online presence, such as an existing e-mail address or a website. The patent characterizes prior art online search and directory services as being "tedious and often unsuccessful." (A1970, col. 1 ll. 43-47.) The '122 Patent purports to claim a computer-implemented method for providing each member with an "individual online presence" that includes an "individual home page." (A1976, Claim 1.)

The '122 patent issued on January 5, 2010 with original claims 1-15. Claim 1, the sole independent claim of the original claims, was not amended during the reexamination. All other claims involved in this appeal depend from claim 1.

## B.    The Reexamination Proceedings

In August 2010, Facebook filed a request for *inter partes* reexamination of claims 1-15 based on numerous prior art references. (A0353-A0758.) On October 6, 2010, the Examiner granted Facebook's request and found that the prior art cited by Facebook presented 13 substantial new questions of patentability with respect to claims 1-15. (A1977-1988 at A1982-A1983.) The Examiner also noted that none of the prior art references cited by Facebook had been cited during the original prosecution of the '122 patent. (A1982.) On the same day, the Examiner issued an initial Office Action rejecting claims 1-15 and adopting Facebook's proposed grounds of rejection. (A0344-A0352.)

### 1.    The Patent Owners Argue that Claim 1 Requires All Steps to Be Performed by the "Interface Server Computer" – But Make No Amendments to that Effect

On November 16, 2010, Appellants filed a response to the initial Office Action in which they argued that the claims should be confirmed over the prior art. As their first argument to the Examiner, the patent owners asserted that the phrase in the preamble of claim 1, "by an interface server computer," required that each step recited in the body of claim 1 be performed by the interface server computer:

> Claim 1 claims "A method for providing individual online presences for each of a plurality of members of a group of members <u>by an interface server computer</u> comprising the steps of: . . ."  For the prior art to disclose the method of claim 1, the prior art must at the very least disclose an <u>interface server computer</u> that <u>performs the recited method steps</u>.

(A0337 (underlining in original).)

The PTO's rules governing reexamination granted the patent owners the absolute right to make claim amendments in response to the initial Office Action.  *See* M.P.E.P. § 2666.01 ("Amendments to the patent being reexamined (where the patent has not expired) may be filed by the patent owner in the reexamination proceeding. Such amendments may be provided by the patent owners after the first Office action on the merits has been issued.").  The patent owners could therefore have removed any doubt as to whether or not an "interface server computer" was required for each step through an amendment to claim 1.  But the patent owners elected to make no amendments to claim 1 and instead to rest on arguments about the scope of their original claims.  The patent owners clearly knew they could amend their claims considering that they added new claims 16-26 after the initial Office Action.  (A0328-0333.)

The patent owners' argument was problematic though, as the Examiner and the PTAB recognized, the plain language of claim 1 does not require that each step be performed by an "interface server computer."  This is clear from the language of claim 1 reproduced below:

7.

1.  A method for providing individual online presences for a each of a plurality of members of a group of members <u>by an interface server computer</u> comprising the steps of:

**[a]**  maintaining a database comprising information associated with each of said plurality of members at a database system connected to <u>said interface server computer</u>;

**[b]**  allotting individual URLS to each of said plurality of members by associating an individual URL with each individual member of said plurality of members in said database system;

**[c]**  associating an individual home page for each said individual member of said plurality of members with said individual URL allotted to said individual member in said database system, said individual home page comprising

> information from said database associated with said individual member;

> a first control for submitting a comment about said individual member; and

> a second control separate from said first control for sending a message other than said comment to said individual member;

**[d]**  receiving <u>by said interface server</u> an online request for said individual URL from a requesting source;

**[e]**  providing said individual home page <u>by said interface server computer</u> to said requesting source.

(A1976, claim 1 (underlining added; brackets added for notation).)  As shown above, the requirement of performance "by [an/said] interface server computer" appears only in the preamble and steps **[d]** and **[e]** of claim 1.[1]  Step **[a]** merely

---

[1] The "providing" step **[e]** recites performance "by said interface <u>server computer</u>"

recites storage at a database that is "connected to" the interface server computer, and steps **[b]** and **[c]** make no mention of the interface server computer.  The patent owners' arguments to the Examiner essentially sought to extend the preamble language, "by an interface server computer," to all of the claim steps in the body.  But they never attempted to reconcile the fact that claim 1 expressly recited performance by the interface server computer for steps **[d]** and **[e]**, but imposed no such requirement for any other steps.

### 2.    The Examiner Rejects the Patent Owners' Argument and Maintains the Rejection of the Claims

On April 15, 2011, the Examiner issued an Action Closing Prosecution ("ACP") rejecting all claims of the '122 patent, including new claims 16-26. (A0222-A0280.)  The ACP specifically addressed the "interface server computer" issue, but did not appear to agree with the patent owners' contention that each step of claim 1 had to be performed by the recited "interface server computer."  A careful reading of the ACP reveals that the Examiner focused instead on the two specific steps in the body of claim 1 that expressly recited performance "by said

---

while the "receiving" step **[d]** recites performance "by said interface server."  Appellee does not believe that omission of the word "computer" from step **[d]** is material and has interpreted that step as referring to the "interface server computer" recited earlier in the claim.  For clarity and consistency, therefore, Appellee will refer to these two steps as "interface server computer" limitations, consistent with how they were referenced by the Examiner.

interface server computer," and looked for that requirement in the prior art only with respect to those claim steps.

For example, in finding independent claim 1 anticipated by the GeoCities prior art reference, the Examiner included a written "GeoCities Note" stating that "[t]he Web server(s) behind GeoCities web sites correspond to the claimed 'interface server computer' set forth repeatedly in claim 1-15 of the '122 patent." (A0228.) The Examiner found that the disclosures in Geocities meet "all *the 'by said interface server computer' limitations recited in the claims*." (*Id.* (emphasis added).) As noted above, the "by *said* interface server computer" phrase appears only in steps **[d]** and **[e]** of claim 1. In analyzing the prior art, the Examiner found that GeoCities disclosed use of an interface server for those two steps, but did not make any such determination for the other steps. (A0228-A0230, ¶¶ 1, 15, 17 (citing to GeoCities Note only as to the preamble and steps **[d]** and **[e]**).) The Examiner employed a similar analysis with respect to the other prior art applied against claim 1. (A0235-237, A0240-A0242, A0246-A0248, A0251-A0253.) Contrary to Appellants' assertions in this appeal, therefore, the Examiner did not construe claim 1 to require that all claim steps be performed by the interface server computer recited in the preamble.

### 3.   The Patent Owners Again Fail to Amend Claim 1, and the Examiner Maintains the Rejections

Pursuant to 37 C.F.R. § 1.116, the patent owners could have sought leave to amend their claims following the Action Closing Prosecution based "upon a showing of good and sufficient reasons why the amendment is necessary and was not earlier presented."  37 C.F.R. § 1.116(b)(3).  But the patent owners did not request leave to amend claim 1. They instead again argued that the preamble language in claim 1 required all steps to be performed by "the interface server computer." (*See, e.g.*, A0174.)

On June 15, 2011, Facebook filed its written response arguing that the "interface server computer" language in the preamble did not impose any limitation on the subsequent steps recited in the body of the claim.  (*See, e.g.*, A1989-2016 at A1994.)  Facebook further noted that "[t]he Examiner has rejected the Patent Owner's previous attempt to convert this preamble language into a claim limitation and the Patent Owner has presented no basis for a departure from that position." (*Id.*)  Facebook also argued that even if the claims did require that the interface server perform each step, the prior art would still invalidate.  (A1994-A1995.)  The Examiner agreed with Facebook and adopted Facebook's comments as part of the Right of Appeal Notice ("RAN").  (A0169 ("The examiner <u>agrees with and adopts</u> third party's response to patent owner's arguments which are hereby incorporated in this Office action." (underlining in original).)

#### 4.    Appeal to the PTAB and the PTAB Decision

The patent owners subsequently appealed to the Board of Patent Appeals and Interferences ("BPAI"), which later became the Patent Trial and Appeal Board ("PTAB") (collectively, the "Board").  (A0034-0036, A0071.)  With respect to claim 1, the patent owners' primary argument was that the prior art cited by the Examiner did not disclose that an "interface server computer" performed all steps of the claimed method.  (A0041-A0042.)  Facebook cross-appealed certain grounds of rejection that were not adopted by the Examiner.  (A2017-A2019, A2053-A2054.)  Briefing for the appeal was completed on February 13, 2012 (A0001), and oral argument was heard on October 17, 2012.  (A2057.)

On June 5, 2013, the PTAB issued its Decision on Appeal ("PTAB's Decision").  (A2055-A2137.)  The PTAB's Decision affirmed-in-part and reversed-in-part the decision of the Examiner, with the end result being that all claims of the '122 patent stand rejected on multiple grounds.  The rejections addressed in the PTAB's Decision fell into three categories: (1) rejections adopted by the Examiner that the PTAB affirmed; (2) rejections adopted by the Examiner that the PTAB reversed; and (3) rejections not adopted by the Examiner that were entered by the PTAB. (A2127-A2133.)  The PTAB designated the rejections in category (3) as New Grounds of Rejection under 37 C.F.R. § 41.77(b).  (A2133.)  Those rejections are not part of this appeal. This appeal concerns only category (1)

containing those rejections adopted by the Examiner affirmed without change by the PTAB.

With respect to claim 1, the PTAB affirmed ten of the Examiner's rejections and reversed one, resulting in affirmance of four anticipation rejections and six rejections based on obviousness.  (A2127-A2129.)  In addressing the patent owners' argument about claim 1, the PTAB applied the same interpretation as the Examiner.  The PTAB construed the phrase "by an interface server computer" in the preamble of claim 1 "as not requiring that all recited steps are performed by an interface server computer."  (A2069.)  The PTAB concluded that "the recited 'maintaining . . .,' 'allotting . . .,' and 'associating . . .' steps need not be performed by an interface server computer."  (*Id.*)

In reaching this conclusion, the PTAB noted that claim 1 includes the "explicit recitation that certain steps within the body of the claim are performed either 'by an interface server' or 'by said interface server computer,' whereas other steps include no such recitation."  (A2067 (citation removed).)  The PTAB found that the claim language, therefore, "suggests that all the steps need not be performed by the server computer."  (*Id.*)  The PTAB further found that the following passage in the '122 specification provides further support for its conclusion:

> [A]lthough certain functions have been described herein as being
> provided by an interface serve computer, those functions may be
> provided by one or more other devices.

(A2068 (quoting A1976, col. 13 ll. 55-58).)   The PTAB thus ruled that the '122 patent "contemplates that devices other than an interface server computer may perform functions of the invention described therein." (*Id.*)

The patent owners subsequently filed a request for rehearing with the PTAB. The sole argument raised by the patent owners was that the PTAB erred in not designating the affirmed rejections by the Examiner as "A New Ground of Rejection" under 37 C.F.R. § 41.77(b).  The patent owners asserted that the PTAB interpreted claim 1 different from the Examiner with respect to the issue of whether an "interface server computer" is required to perform all steps.  (A0003-A0010.)

On December 27, 2013, the PTAB issued a decision denying the patent owners' request for rehearing ("PTAB's Rehearing Decision"), and provided several reasons for its decision.  (A2138-A2143.)  The PTAB first noted that it was not evident that the Examiner's rejections were premised on a different interpretation than that of the PTAB.  (A2141.)  The PTAB also found that "[i]t is clear from the record that the claim scope advocated by the Patent Owner in connection with the 'by said interface server computer' recitation of the preamble was a source of dispute between the Patent Owner and the Requester throughout

the proceeding." (*Id*.)  The PTAB further found that, in any event, the PTAB's affirmance did not alter the thrust of the Examiner's rejections.  (A2142.)

## V.     SUMMARY OF THE ARGUMENT

The patent owners' primary argument on appeal is that the PTAB erred in holding that the phrase in the preamble of claim 1, "by an interface server computer," does not require that every step in the body of the claim be performed by the interface server computer.  But Appellants have provided no justification for this Court to reach this issue.  Their opening brief makes no attempt whatsoever to show that their proposed interpretation of claim 1, even if adopted by this Court, would affect any of the rejections of claim 1 affirmed by the PTAB.

This appeal amounts to little more than a request that this Court issue an "advisory opinion" on claim construction, contrary to the mandates of Article III of the Constitution.  This Court's precedents make clear that it will not decide questions of claim construction when, as here, the appellants have failed to explain how adoption of its claim construction position would impact the case.  *See, e.g.*, *Fresenius USA, Inc. v. Baxter Int'l., Inc.*, 582 F.3d 1288, 1304 (Fed. Cir. 2009).  In the present case, the PTAB affirmed ten separate rejections of claim 1, four based on anticipation by four different prior art references.  Appellants do not even discuss any of the prior art references addressed in the PTAB's extensive decision. Appellants' omission was not a mere oversight – as they know, the prior art fully

discloses the claimed method even under the erroneous interpretation advanced by Appellants in their opening brief.

Even if this Court chooses to reach the claim construction issue, the appeal still fails. The PTAB correctly held that the preamble phrase, "by an interface server computer," imposes no requirements on the specific steps in the body of the claim. The specification of the '122 patent makes clear that an "interface server computer" is not required for performance of each step. (A1976, col. 13 ll. 55-58.) And as the PTAB correctly observed, the applicants expressly required performance by the "interface server computer" for two of the steps in claim 1, providing powerful evidence that the other three steps impose no such requirement. (A2066-2070.)

This Court should also reject Appellants' alternative argument that the PTAB's affirmance of the Examiner's rejections should have been designated as "A New Ground of Rejection" under 37 C.F.R. § 41.77(b) in order to allow the patent owners to make further claim amendments. As the PTAB explained in its decision denying Appellants' request for rehearing, the PTAB affirmed the Examiner's rejections of claim 1 based on the same reasoning employed by the Examiner. (A2138-2143.) Appellants cannot show any change of position that would have justified reclassifying the Examiner's rejections as a New Ground of Rejection.

This Court's precedents make clear that the PTAB is not required to enter a "New Ground of Rejection" when, as here, the patent owners had an opportunity to react to the thrust of the rejection. *See, e.g., In re Adler*, 723 F.3d 1322, 1327 (Fed. Cir. 2013). Here, the "interface server computer" argument was front-and-center from the beginning of this reexamination. The "interface server computer" argument, in fact, was the patent owners' very first argument to the Examiner following the initial Office Action. Appellants had at least two opportunities to seek amendment to their claims during the reexamination, but instead made the tactical decision to rest on legal arguments about the scope of their original claims. As the PTAB recognized: "If the Patent Owner intended that each step be carried out by the interface sever computer, it was the Patent Owner's opportunity and responsibility to remove ambiguity in that regard by way of amendment to the claims." (A2068 (citing *In re Bigio*, 381 F.3d 1320, 1324 (Fed. Cir. 2004).) By making this tactical choice, the patent owners assumed the clearly foreseeable risk that their arguments would be found unpersuasive by the Examiner and the PTAB – as they were. Because the PTAB's affirmance did not change the thrust of the rejections entered by the Examiner, and the patent owners had full notice and opportunities to address this issue during the reexamination, the PTAB was not required to designate the affirmance as a New Ground of Rejection.

## VI.  ARGUMENT

### A.  Standard of Review

#### 1.  Claim Interpretation

The Federal Circuit has stated that it reviews claim constructions of the PTO *de novo*.  *C.W. Zumbiel Co., Inc. v. Kappos*, 702 F.3d 1371, 1381 (Fed. Cir. 2012).[2]  "During reexamination, as with original examination, the PTO must give claims their broadest reasonable construction consistent with the specification."  *In re ICON Health and Fitness, Inc.*, 496 F.3d 1374, 1379 (Fed. Cir. 2007).

#### 2.  New Ground of Rejection

The Federal Circuit reviews the issue of whether the PTAB relied on a new ground of rejection *de novo*.  *Rambus Inc. v. Rea*, 731 F.3d 1248, 1256 (Fed. Cir. 2013).  "It is well-established that the Board is free to affirm an examiner's rejection so long as 'appellants have had a fair opportunity to react to the thrust of the rejection.'"  *In re Jung*, 637 F.3d 1356, 1365 (Fed. Cir. 2011) (quoting *In re Kronig*, 539 F.2d 1300, 1302-03 (C.C.P.A. 1976)); *accord Adler*, 723 F.3d at 1327.

---

[2] Judge Plager, however, has opined that the Federal Circuit has not been consistent in articulating the standard of review in prior cases:  "[W]e now appear to have two contradictory lines of authority on the question of how this court reviews Board claim constructions—a deferential 'reasonable' (arbitrary/capricious-type review), and a non-deference 'pure' law type review."  *Flo Healthcare Solutions, LLC v. Kappos*, 697 F.3d 1367, 1378 (Fed. Cir. 2012).

### 3.      Factual Findings and Legal Conclusions

The Federal Circuit reviews factual findings of the PTAB for substantial evidence and legal conclusions of the PTAB *de novo*. *In re Morsa*, 713 F.3d 104, 109 (Fed. Cir. 2013). Anticipation is a question of fact that this Court reviews for substantial evidence. *Id.* Obviousness is a question of law reviewed *de novo* based on underlying facts reviewed for substantial evidence. *Id.*

### B.      The Federal Circuit Should Not Issue an Advisory Opinion on Claim Construction Because Appellants Have Provided No Explanation for Why Their Proposed Construction Would Affect the PTAB's Decision

Appellants' primary argument is that the PTAB erred in finding that claim 1 of the '122 patent does not require that the "interface server computer" perform every claim step. But Appellants do not actually explain how resolution of that question would impact the PTAB's decision (and as explained below, it would not). Appellants instead ask this Court to adopt their proposed interpretation and remand to the PTAB to apply it. (Appeal Br. at 35.) This would be improper.

The Federal Circuit has recently observed that Article III of the U.S. Constitution "only allows the federal courts to adjudicate 'Cases' and 'Controversies.'" *Consumer Watchdog v. Wis. Alumni Research Foundation*, No. 2013-1377, ___ F.3d ____, 2014 WL 2490491, at *1 (Fed. Cir. Jun. 4, 2014) (quoting U.S. Const. art. III, § 2, cl. 1). The requirements of Article III "apply

with equal force to appeals from administrative agencies, such as the U.S. Patent and Trademark Office (PTO), to the federal courts." *Id.* at 2.

One of the key limitations of Article III is that federal courts may not issue "advisory opinions" resolving issues that will not affect a controversy before the court. *See Jang v. Boston Scientific Corp.*, 532 F.3d 1330, 1336 (Fed. Cir. 2008) ("The Supreme Court has explicitly held that Article III does not permit the courts to resolve issues when it is not clear that the resolution of the question will resolve a concrete controversy between interested parties.") (citation omitted).    In the patent law context, for example, this Court has repeatedly refused to decide an issue of claim construction when, as here, the appellants did not explain how resolution of the claim construction issue would impact the case.    *Id.*; *see also Fresenius,* 582 F.3d at 1304 (declining to consider claim construction arguments where appellant failed to explain how purported district court error would impact the case); *Hakim v. Cannon Avent Group, PLC*, 479 F.3d 1313, 1318-19 (Fed. Cir. 2007) (holding that district court did not err in invalidating patent without first construing the claims where patentee failed to show "how claim 'construction' would affect the issue of anticipation").    Specifically, when an appellant "fail[s] to clearly explain what result would occur if [the Federal Circuit] adopted [the appellant's] proposed claim constructions," the Federal Circuit may decline to

consider the appellant's claim construction arguments. *Fresenius*, 582 F.3d at 1304.

In the present case, Appellants have presented no substantive argument that their proposed interpretation of claim 1 would undermine any of the ten rejections entered by the PTAB. Appellants did not apply their proposed construction to even a single piece of prior art.[3] (Appeal Br. at 25-29.) By failing to explain the impact of their proposed construction on the PTAB's rejections, Appellants are essentially requesting that this Court issue an improper advisory opinion on claim construction. But the issuance of advisory opinions is not the purpose of this Court, or any Article III court. *Jang*, 532 F.3d at 1336.

Indeed, the PTAB's rejections would not be affected even if Appellants' position is adopted. As Facebook explained during the reexamination, even under the patent owners' proposed construction, the prior art invalidates the claims. (*See, e.g.*, A1993-A2008; A0816, A0921, A0979-981, A0834, A0975, A1020, A1022,

---

[3] In one paragraph of the Statement of Facts, Appellants state that their written response to the Examiner's Action Closing Prosecution shows that the prior art does not invalidate the claims under their proposed construction. This conclusory assertion fails to address any specific prior art reference and provides no guidance on this appeal. *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) ("[M]ere statements of disagreement with the district court as to the existence of factual disputes do not amount to a developed argument."); *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) (per curiam) ("Judges are not like pigs, hunting for truffles buried in briefs.").

A1050, A1054, A1056, A1090-1091; A1162, A1257-1259, A1287-1288, A1292, A1311-1313, A1336, A1350, A1353, A1358, A1366, A1411-1412; A1517-A1542; A1562, A1569, A1584, A1795-1796, A1827.)   In any event, given Appellants' complete failure to address any prior art in their appeal brief, there is no basis for them to argue that the rejections should not stand under their proposed construction.

Appellants have therefore waived any argument on the merits of the PTAB's Decision, and this waiver may not be cured by inserting new arguments in a reply brief to which Facebook cannot respond.  *See In re Swanson*, 540 F.3d 1368, 1381-82 (Fed. Cir. 2008) ("On appeal, [appellant's] only argument for why the Board erred in affirming the rejection of claims . . . as anticipated by [the prior art] is the alleged lack of a substantial new question of patentability.   Accordingly, any arguments as to the merits of the Board's rejection have been waived."); *SmithKline*, 439 F.3d at 1319 ("Our law is well established that arguments not raised in the opening brief are waived.").

**C.    The PTAB Correctly Construed Claim 1 as not Requiring that All Method Steps Be Performed by the "Interface Server Computer"**

If this Court chooses to address the PTAB's interpretation of claim 1, it should affirm the PTAB's Decision.  During *inter partes* reexamination, "the PTO must give claims their broadest reasonable construction consistent with the specification." *ICON*, 496 F.3d at 1379.  As noted previously, Appellants assert

that the phrase "by an interface server computer" in the preamble of claim 1 requires that all method steps in the body of the claim be performed by the server. (Appeal Br. at 25-29.)  The PTAB correctly rejected this argument.  (A2066-A2070.)

### 1.    The Claim Language and Specification Support the PTAB's Construction

The PTAB's ruling is supported by the plain language of claim 1.  The preamble recites a method for providing individual online presences "by an interface server computer," but claim 1 does not make that language applicable to the steps that follow.  As the PTAB recognized, the language of the claims "suggests that all the steps need not be performed by the server computer." (A2067.)  The last two steps in claim 1 expressly refer back to the interface server computer in the preamble, (i.e., "receiving *by said interface server* an online request" and "providing said individual home page *by said interface server*"), whereas the other steps do not.  (A1976, claim 1 (emphasis added).)  The fact that the applicants incorporated this language into only two steps provides strong evidence that the other three steps have no such requirement.  *See, e.g., Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc) ("[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms."); *Storage Tech. Corp. v. Cisco Sys.*, 329 F.3d 823, 831 (Fed. Cir. 2003) ("Whether to treat a preamble as a claim limitation is determined on the facts of

each case in light of the claim as a whole and the invention described in the patent."). Appellants' construction, in fact, would render superfluous the express recitation of performance by "said interface server" in steps **[d]** and **[e]** of claim 1. Had the applicants intended to claim a method in which each step had to be performed by "said interface server computer," they certainly could have included express language to that effect.

The PTAB's ruling is further supported by the specification. As the PTAB decision correctly observed, the specification does not identify the device that performs the "'maintaining . . .,' 'allotting . . .,' and 'associating . . .'" steps in claim 1. (A2069.) In fact, the specification rejects the idea that these steps must always be performed by an interface server computer by noting that "although certain functions have been described herein as being provided by an interface server computer, *those functions may be provided by one or more other devices*." (A1976, col. 13 ll. 55-58 (emphasis added).) The PTAB correctly recognized that "the '122 Patent contemplates that devices other than an interface server computer may perform the functions of the invention described therein." (A2068.) Accordingly, there is no support in the claim language or the specification for the patent owners' assertion that the "maintaining," "allotting," and "associating" steps must be performed by the interface server computer recited in the claim.

### 2.    The Original Prosecution History Fails to Support the Appellants' Unsupported Construction

Appellants argue that a claim amendment to overcome a 35 U.S.C. § 101 rejection during the original prosecution history supports their position that the interface server computer must perform each method step.  (Appeal Br. at 26-27.) But Appellants' opening appeal brief inaccurately and misleadingly portrays the prosecution history.  The actual amendments to claim 1 are shown below:

> 1. (Currently amended) A method for providing an online presence for a first member of a group of members <u>by an interface server computer</u> comprising the steps of:
>      maintaining a database comprising information associated with said first member <u>at a database system connected to said interface server computer</u>;
>      allotting a first URL to said first member <u>by associating said first URL with said first member in said database system</u>;
>      associating a first home page for said first member with said first URL <u>in said database system</u>, said first home page comprising information from said database associated with said first member, a first control for submitting a comment about said first member; and a second control separate from said first control for sending a message other than said comment to said first member,
>      receiving <u>by said interface server computer</u> an online request for said first URL from a requesting source;
>      providing said home page <u>by said interface server computer</u> to said requesting source.

(A0090 (underlining in original).)[4]

---

[4] These amendments were made prior to the Supreme Court's decision in *Bilski v. Kappos*, 561 U.S. 593 (2010) and its progeny.  Facebook does not concede that any claim of the '122 patent complies with 35 U.S.C. § 101.

As shown above, the patent owners did not simply amend claim 1 to add the "by an interface server computer" language to the preamble. They also amended claim 1 by adding the express "interface server computer" language to *the last two steps of the claim* but not the other steps. (*Id.*) The patent owners further amended claim 1 to add a "database" limitation, and argued that the additions of "an interface server computer *and a database system*" made their claims patentable over the § 101 rejection. (A0093.)

The patent owners' actual amendments during the original prosecution, therefore, simply fail to support their assertion that the interface server must perform each step. Their arguments about the preamble would, in fact, impermissibly render superfluous the amendments to the last two steps of claim 1 expressly requiring performance by "said interface server computer." *See, e.g., Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1563 (Fed. Cir. 1991) ("When the language of a claim is clear, as here, and a different interpretation would render meaningless express claim limitations, we do not resort to speculative interpretation based on claims not granted.").

### D.    The PTAB Correctly Refused to Designate Its Affirmance of the Examiner's Rejections as New Grounds of Rejection

Finally, Appellants contend that the PTAB erred by affirming the Examiner's rejections rather than designating them as "A New Ground of Rejection" under 37 C.F.R. § 41.77(b). Appellants argue that the PTAB should

have entered New Grounds of Rejections because the PTAB allegedly interpreted the "by an interface server computer" language differently than the Examiner. But Appellants have identified no error in the PTAB's affirmance of the Examiner's rejections.

This Court has made clear that the PTAB "is free to affirm an examiner's rejection so long as 'appellants have had a fair opportunity to react to the thrust of the rejection.'" *Jung*, 637 F.3d at 1365 (*quoting Kronig*, 539 F.2d at 1302-03); *accord Adler*, 723 F.3d at 1327 (Fed. Cir. 2013). In the present case, the PTAB correctly found that the patent owners had a full opportunity to respond to the rejections.

### 1.   The Examiner and the PTAB Interpreted Claim 1 Consistently

This Court has noted that the thrust of the PTAB's rejection changes when "it finds facts not found by the examiner regarding the differences between the prior art and the claimed invention, and these facts are the principal evidence upon which the Board's rejection was based." *Adler*, 723 F.3d at 1327 (citation omitted). No such thing occurred here. The rejections affirmed by the PTAB's Decision were identical to rejections entered by the Examiner. The PTAB did not add additional prior art nor did it identify any statutory ground of invalidity (e.g. anticipation or obviousness) that had not already been reflected in the Examiner's affirmed rejections.

Nor did the PTAB's Decision rely on any facts not already found by the Examiner. In fact, the entire premise of Appellants' argument – that the PTAB and Examiner interpreted claim 1 differently – has no support in the record. The PTAB correctly recognized that "it is not evident that the Examiner's rejections were premised necessarily on an interpretation of the preamble of claim 1 as requiring that all steps of the claimed method must be performed by an interface server computer." (A2141.) Indeed, as explained in Part IV.B.2 above, a closer inspection of the Examiner's Action Closing Prosecution reveals that like the PTAB, the Examiner did **<u>not</u>** interpret claim 1 to require all steps be performed by the interface server computer. As noted previously, the Examiner looked for performance by an "interface server" only as to the two steps of independent claim 1 that expressly recite "by said interface server." (*See, e.g.*, A0228-A0230.)

The fact that the Examiner and the PTAB used the same construction is further supported by the Examiner's specific findings regarding each claim limitation. In referring to her note on the GeoCities' web servers, the Examiner stated that she "will refer to this [web server] note as explanation of how GeoCities meets these limitations in the claims." (A0228; A0120.) The Examiner then proceeded to apply the "Geocities Note" only to those elements that recite the "by said interface server" limitation. (A0229-A0230, ¶¶ 1, 15, 17; A0120-A0122, ¶¶ 1, 15, 17.) Notably, the Examiner did not apply the "GeoCities Note" to limitations

28.

such as "maintaining a database" that need not be performed by an interface server. (A0229-A0230; A0120-A0122.)

Facebook's comments in response to the Examiner's Action Closing Prosecution and the Examiner's recognition of those comments in the Right of Appeal Notice further demonstrate that the Examiner and the PTAB used the same construction. Specifically, Facebook noted that "[t]he Examiner has rejected the Patent Owner's previous attempt to convert [the interface server] preamble language into a claim limitation, and the Patent Owner has presented no basis for a departure from that position." (A1994.) The Examiner agreed with Facebook and adopted Facebook's comments as part of the Right of Appeal Notice. (A0169 ("The examiner agrees with and adopts third party's response to patent owner's arguments which are hereby incorporated in this Office action." (underlining in original)).) Because the Examiner and the PTAB applied the same construction, Appellants cannot argue that they lacked an opportunity to react to the thrust of the rejections.

In any event, and as recognized by the PTAB, "[e]ven assuming that the Examiner construed claim 1 of the '122 patent more narrowly than did the Board in the Decision, [the PTAB's] affirmance of the Examiner's rejection based on a broader interpretation of the limiting effect of the claim preamble did not alter the thrust of the rejection." (A2142.) That is, the PTAB did not base its decision "on

any underlying facts that were additional to, or different from, those on which the Examiner relied." (*Id.*) Specifically, if the PTAB's construction was actually broader, its "affirmance of the rejection did not draw from the teaching of the prior art any more content than that which was relied on by the Examiner." (*Id.*)

## 2. The Claim Phrase "By an Interface Server Computer" Was At Issue Throughout the *Inter Partes* Reexamination

Moreover, even assuming Appellants had identified some difference in the way the PTAB and the Examiner interpreted the claims (and they did not), the PTAB's decision should still be affirmed because Appellants were on notice of the "interface server computer" issue and had ample opportunities to respond to the thrust of the Examiner's rejections. As the PTAB recognized, "[i]t is clear from the record that the claim scope advocated by the Patent Owner in connection with the 'by said interface server computer' recitation of the preamble was a source of dispute between the Patent Owner and the Requester throughout the proceeding." (A2141.)

The patent owners' response to the initial Office Action, in fact, specifically argued that each step of claim 1 had to be performed by the "interface server computer" recited in the preamble. (A0337.) The patent owners could have availed themselves of their absolute right to amend claim 1 in response to the initial Office Action. *See* M.P.E.P. § 2666.01 ("Amendments to the patent being reexamined (where the patent has not expired) may be filed by the patent owner in

30.

the reexamination proceeding. Such amendments may be provided by the patent owners after the first Office action on the merits has been issued.").  The patent owners obviously knew about this ability as they added 11 new claims in response to the initial Office Action and could have amended claim 1 to make crystal clear that each step must be performed "by said interface server computer."  As this Court has observed, "a patent applicant has the opportunity and responsibility to remove any ambiguity in claim term meaning by amending the application." *Bigio*, 381 F.3d at 1324 (citation omitted).

But the patent owners chose instead to roll the dice with legal arguments about the scope of claim 1.  By making this choice, the patent owners assumed the clearly foreseeable risk that their arguments would be found unpersuasive by the Examiner and the PTAB – as they were.  As the PTAB recognized:  "If the Patent Owner intended that each step be carried out by the interface sever computer, it was the Patent Owner's opportunity and responsibility to remove ambiguity in that regard by way of amendment to the claims."  (A2068 (citing *Bigio*, 381 F.3d at 1324).)  *See also Flo*, 697 F.3d at 1375 ("Because Flo decided not to amend the disputed claims to directly include a length-adjustable vertical beam when it had the opportunity to do so, we decline to read such a limitation into the claims on appeal.").

Even after issuance of the Action Closing Prosecution, the patent owners could have petitioned for leave to amend their claims under 37 C.F.R. § 1.116, which authorizes claims amendments after an Action Closing Prosecution "upon a showing of good and sufficient reasons why the amendment is necessary and was not earlier presented." 37 C.F.R. § 1.116(b)(3). But the patent owners ignored this opportunity as well, electing instead to push forward with their meritless arguments attempting to import the preamble phrase, "by an interface server computer," into each claim step. The patent owners' decision to not amend their claims was clearly the result of a tactical and strategic decision, not the result of unfair surprise or unforeseen circumstances. Appellants do not now deserve a "do-over" of the reexamination at the expense of both Facebook and the PTO.

### 3.    *Rambus* **Is Distinguishable**

Appellants attempt to rely on *Rambus,* 731 F.3d 1248, to argue that the PTAB should have designated its affirmance as a New Ground of Rejection. But the facts of *Rambus* bear no resemblance to the present case. In *Rambus*, the Federal Circuit found that the Board should have designated its rejection as a new ground because it "essentially provides a new motivation to combine the [§ 103 prior art] references." *Id.* at 1256. Specially, the Board did not adopt the Examiner's reason to combine, ***which all parties had agreed was erroneous***. *Id.* at

32.

1254.  The Board instead supplied its own separate reasons to combine prior art references, which the Federal Circuit found "were completely new." *Id.* at 1256.

Nothing of the sort occurred here.  The PTAB affirmed the Examiner's § 102 and § 103 grounds of rejection based on the same art used by the Examiner, applying the same interpretation of the claims.  And as explained above, the patent owners had multiple opportunities to address all of the prior art references and the reasons for combining them.  Further, even if the PTAB's construction was broader (which it was not) the thrust of the rejections was the same.

## VII.   CONCLUSION AND STATEMENT OF RELIEF SOUGHT

Facebook respectfully requests that this Court dismiss the present appeal, or in the alternative, affirm the PTAB's Decision on Appeal and the PTAB's Decision on Rehearing.


Dated: July 7, 2014                              Respectfully submitted,

                                                 COOLEY LLP

                                                 */s/ Heidi L. Keefe*
                                                 Heidi L. Keefe
                                                 Cooley LLP

                                                 *Attorneys for Appellee*
                                                 *Facebook, Inc.*

# United States Court of Appeals
## for the Federal Circuit

*Weyer v Facebook, Inc.,* No. 2014-1378 (Reexamination Nos. 95/001,411)

### CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by COOLEY, LLP, Attorneys for Appellee to print this document. I am an employee of Counsel Press.

On **July 7, 2014,** counsel has authorized me to electronically file the foregoing **Brief of Appellee** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to any of the following counsel registered as CM/ECF users:

Frank Michael Weyer
(fweyer@techcoastlaw.com)
2032 Whitley Avenue
Los Angeles, CA  90068
Tel: (310) 494-6616

Paper copies will also be mailed to the above counsel at the time paper copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court, via Federal Express, within the time provided in the Court's rules.

July 7, 2014                                          /s/ Robyn Cocho
                                                              Counsel Press

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS**

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

   __X__   The brief contains _7,732__ words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),or

   _____   The brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

   __X__   The brief has been prepared in a proportionally spaced typeface using _MS Word 2013_ in a _14_ point _Times New Roman_ font or

   _____   The brief has been prepared in a monospaced typeface using _____ _____in a ___ characters per inch_____ font.

July 7, 2014_____          _/s/ Heidi L. Keefe_____
                                 Heidi L. Keefe
                                 Cooley LLP

                                 *Attorneys for Appellee*
                                 *Facebook, Inc.*